# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| Plaintiff, | * | |
| | * | Case No.: RWT 09cv1513 |
| v. | * | |
| **$134,750 U.S. CURRENCY** | * | |
| Defendant. | * | |

**\*\*\***

## <u>MEMORANDUM OPINION</u>

This action arose out of the seizure of $134,750 in United States currency, which the Government alleges constitute proceeds or substitute assets traceable to structuring to avoid currency reporting requirements in violation of 31 U.S.C. § 5324(a)(3). <u>Pro se</u> Claimant Amanuel Asefaw ("Asefaw") claims an interest in the property on behalf of himself and his mother and requests the return of the property.[1]

By Memorandum Opinion dated March 22, 2011, this Court denied the Government's renewed motion to strike Asefaw's claim form and granted him leave to supplement his opposition to the Government's second motion for summary judgment. <u>See</u> ECF Nos. 43 and 44. In accordance with the Court's Order, Asefaw supplemented his opposition with a notarized affidavit dated March 28, 2011. <u>See</u> ECF No. 45. In his affidavit, Asefaw claims that he did not know of the reporting requirements until the instant lawsuit and therefore did not intentionally try to evade them. (Asefaw Aff., March 28, 2011, p. 4, ECF No. 45.) Asefaw explains that he deposited the funds in smaller amounts because he feared robbery. <u>Id</u>. at p. 10. He also

---

[1] For additional background, see the Court's Memorandum Opinions dated April 28, 2010 and March 22, 2011. ECF Nos. 24 and 43.

contends that the funds belong to his mother, who was completely unaware of how her money was deposited, let alone the reporting requirements. Id. at 3-4. Because the Court concludes that there are material disputes of fact regarding Asefaw's knowledge of the currency reporting requirements, it will, by separate order, deny the Government's Second Motion for Summary Judgment [ECF No. 34].

**I**

Under the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106-185, 114 Stat. 202 (2000), the Government has the burden of establishing, by a preponderance of the evidence that the defendant property is forfeitable. CAFRA does not, however, limit the right of either party to seek summary judgment.

The Court must grant summary judgment to a moving party if it determines that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 302 (4th Cir. 2006); Fed. R. Civ. P. 56. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." In assessing whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## II.

Federal law requires financial institutions to file reports with the Treasury Department of any cash transaction exceeding $10,000. *See* 31 U.S.C. § 5313(a). Title 31 U.S.C. § 5324 prohibits any person from structuring transactions for the purpose of evading a bank's currency transaction report ("CTR") filing requirements. 31 U.S.C. § 5324. The government may seek civil forfeiture of any funds involved in, or traceable to, such structuring transactions, which violate § 5324. 31 U.S.C. § 5317(c)(2).

As the party seeking summary judgment, the government has the responsibility to show that there is no genuine issue of material fact. United States v. Leak, 123 F.3d 787, 793 (4th Cir. 1997). To prove a § 5324 violation, the government must show that "the violating party had knowledge of the reporting requirements and acted to avoid them." Id. at 794 (quoting United States v. $149,275.66, 945 F.2d 79, 81 (4th Cir. 1991)). Accordingly, "the government cannot prevail on summary judgment if the claimant offers a reasonable and legitimate explanation for the organizing of transactions in amounts under $10,000, and the explanation is verified by facts and circumstances which, if believed, would enable a rational jury to conclude by a preponderance of the evidence that the transactions were not structured for the purpose of evading the reporting requirements." Leak, 123 F.3d at 793 (quoting United States v. Dollar Bank Money Market, et al., 980 F.2d 233, 241 (3d Cir. 1992)).

As a general rule, "summary judgment is seldom appropriate in cases wherein particular states of mind are decisive elements of a claim or defense." Leak, 123 F.3d at 793. This follows from the fact that "a party's mental state is inherently a question of fact which turns on credibility." Id. (quoting Dollar Bank, 980 F.2d at 240).

The Government contends that the Court should grant summary judgment in its favor because the undisputed evidence shows that Asefaw knowingly structured cash deposits to avoid initiating CTR reporting requirements. (Pl.'s Reply 4, ECF No. 39.) Specifically, the Government argues that from March 28, 2007 through April 4, 2007, Asefaw made multiple deposits into his bank accounts totaling over $144,000.00, of which no single deposit exceeded $10,000 and most of which were exactly $10,000. (Pl.'s Reply 4.)

Although this series of transactions at multiple bank branches could surely lead to the inference that Asefaw knew of the reporting requirements and was acting to evade them, this series of transactions cannot by itself sustain the government's burden in light of Asefaw's sworn denial. As noted by the Fourth Circuit,

> Proof that the accused structured transactions in amounts under $10,000 is not enough. It must also be proven that he structured for the specific purpose of evading the federal reporting requirements. If a person were ignorant of the requirements and deposited a large amount of cash in $9000 installments, he would not violate section 5324. A jury might infer from such conduct that he knew of the law's requirements and tried to evade them, but proof of the conduct does not automatically prove, as a matter of law, the intent to avoid reporting.

Leak, 123 F.3d at 793 (quoting Dollar Bank, 980 F.2d at 237)).

In addition to the act of structuring itself, the Government claims that on August 2, 2007, Asefaw "spoke via telephone with an employee of Citibank regarding his currency transaction at Citibank and informed that employee that he was aware of the requirements that a financial institution file a CTR for currency deposits exceeding $10,000 and that, therefore, he purposefully deposited only $10,000 to avoid that filing." (Pl.'s Second Mot. Summ J. 9); see also (Pl.'s Second Mot. Summ. J. Ex. 1 (Veloso Aff).) In support of this contention, the Government attaches as exhibit 5 to its motion, an email from an unidentified Citibank employee, (Pl.'s Second Mot. Summ. J., ex 5), along with a business record certification. (Pl.'s

Reply, ex. 1.) The unidentified author of the email states that during a conversation with Asefaw, Mr. Asefaw "did mention he knew about the CTR and that's why he only deposited $10,000." Id. The email also states that the Citibank employee explained the importance of structuring deposits and filling out a CTR to Mr. Asefaw at that time. Id.

In contrast, Asefaw states in his affidavit that he had no knowledge of CTR reporting or a financial institution's obligation to report currency transactions in excess of $10,000 prior to this litigation. (Asefaw Aff., March 28, 2011, p. 4.) Although Asefaw admits speaking with an "alleged" employee of Citibank on or around August 2, 2007, Asefaw claims that the conversation centered around the source of the deposited funds and flatly denies informing the Citibank employee that he was aware of the CTR requirements. Id. at p. 9.

The Government argues that Asefaw's affidavit contradicts his former sworn deposition testimony. However, a review of the deposition transcript pages provided by the Government reveals that, although Asefaw admittedly did not recall every detail of the conversation, he repeatedly indicated that the focus of the inquiry was the source of the deposited funds. See (Asefaw Dep., May 13, 2010, pp. 101-102.) To the extent Asefaw's response was at all "halting and mangled," (Pl.'s Reply 11), this seems to be a result of not being a native English speaker rather than a deliberate attempt to obstruct the deposition. Thus, it appears disingenuous to suggest that Asefaw's deposition testimony was inconsistent in this critical respect.

In addition, the primary case relied upon by the Government was reversed by the Ninth Circuit on appeal. See United States v. $155,000.00 U.S. Funds, No. 07-3083, 2008 WL 4181184, at *4 (E.D.Wa. Sept. 4, 2008), rev'd United States v. Trading Post of Pasco, et al., 348 Fed. Appx. 315, 2009 WL 3287881, (9th Cir. 2009). As the Government concedes, Trading Post of Pasco is "very similar to the [case] here." (Pl.'s Reply 12-13.) For example, the claimant

made nineteen deposits broken down into amounts less than $10,000; a customer service representative provided claimant with a brochure titled "Currency Transaction Reports" explaining the $10,000 reporting requirement, and; claimant informed two named Immigration and Customs Office of Investigation (ICE) agents over speaker phone that he "tr[ies] to keep [his] deposits under $10,000 to avoid problems." $155, 000 U.S. Funds, 2008 WL 4181184 at *2. Despite these factual allegations, the claimant maintained that he did not possess the requisite intent to evade the reporting requirements. Id. at *4. Upon review of this record, the Ninth Circuit reversed the district court's granting of summary judgment in favor of the government, finding that the claimant raised a genuine issue of material fact with respect to his intent to evade the federal reporting requirements. Trading Post of Pasco, et al., 348 Fed. Appx. at 316-17. Similarly, here, the series of transactions equaling or under $10,000, combined with Asefaw's alleged admission of knowledge of the $10,000 reporting requirements during a conversation with an unidentified Citibank employee, is insufficient to support summary judgment in the face of Asefaw's repeated denial.

The Government also claims that Mr. Asefaw was present at the time M&T Bank personnel completed at least four CTRs from August 30, 2005 through September 27, 2005. (Pl.'s Second Mot. Summ J. 9.) Asefaw disputes this contention. (Claimant's Opp'n Second Mot. Summ. J. 9-10, ECF No. 36.) In support, the Government attaches copies of four CTRs referencing Asefaw, (Pl.'s Second Mot. Summ J., ex. 6), and an affidavit of Special Agent Mary Ann Veloso, of the Internal Revenue Service, declaring that the policy of M&T Bank is to inform the banking customer that a CTR must be completed if the transaction exceeds $10,000 in currency and to file the CTR electronically at the time the transaction occurs. (Veloso Aff. 1, Jan. 4, 2011, ECF No. 40, ex. 3.) In this affidavit, Special Agent Veloso makes broad

6

assertions, relying on personal opinions and information from others unknown.  See id. As the

Fourth Circuit noted with respect to a similar affidavit in Leak, it appears doubtful that these

assertions could survive Rule 56(c)'s requirement that summary judgment affidavits "be made on

personal knowledge" and be "admissible into evidence."  Moreover, even if deemed admissible,

the evidence is too indirect and underdeveloped to show that no genuine issue of material fact

remains. See Leak 123 F.3d at 796.

In short, after reviewing the factual record in the light most favorable to Asefaw, the

Court concludes that there is a genuine issue of material fact exists regarding his mental state.

Asefaw denies previous knowledge of the CTR requirements and states that he was never

advised of CTR reporting requirements in his various discussions with Citibank employees and

bank managers. (Asefaw Aff. at  pp. 4, 9.)  Further, there is evidence to support the conclusion

that Asefaw kept his deposits at $10,000 or less because he feared robbery and similar crimes

that he experienced while running a grocery store.  See e.g., id. at 10.  Although the Government

may be correct that this method of depositing does not afford the best means of protection, the

explanation is not so incredible that it can be dismissed out of hand.  See Leak 123 F.3d at 797

("Courts have recognized that an individual's attempt to protect his personal security may offer a

legitimate explanation for a series of smaller deposits."); Ratzlaf v. United States, 510 U.S. 135

(1994) (noting that individuals may "mak[e] cash deposits in small doses, fearful that the bank's

reports would increase the likelihood of burglary").  Given the lack of direct proof that Asefaw

knew or was informed of the reporting requirements for cash deposits prior to engaging in the

disputed transactions, the Court cannot find that Asefaw's explanation "lacks so completely in

credibility that summary judgment for the government is warranted." Leak, 123 F.3d at 797.

## IV.

For the foregoing reasons, the Court finds genuine issues of material fact as to whether

Asefaw unlawfully structured cash deposits in violation of 31 U.S.C. §5324. Accordingly, the

Court will, by separate order, deny the Government's Second Motion for Summary Judgment. [2]

Date: _Aug 15_, 2011

Roger W. Titus
United States District Judge

---

[2] Because the Court concludes that there are genuine disputes of material fact as to Asefaw's knowledge of the reporting requirements, it need not reach Asefaw's innocent owner defense, brought on behalf of his elderly mother living in Eretria. Should this issue need to be litigated at trial, the Court notes that a person can litigate the rights of another if: (1) the litigant suffered an injury in fact; (2) the litigant had a close relation to the third party; and (3) there exists some hindrance to the third party's ability to protect his or her own interest. Powers v. Ohio, 499 U.S. 400, 411 (1991).